## CIRCUIT COURT OF LOUDOUN COUNTY

Thompson

    v.

Thompson

September 27, 1983

Case No. (Chancery) 8468

By JUDGE THOMAS D. HORNE

    The parties to the instant divorce case were married on June 30, 1972. They separated on October 10, 1981, and were divorced by decree of this Court entered on May 5, 1983. There are no children of this marriage. This was a second marriage for both of the parties.

    In 1973, a baby was delivered stillborn to Mrs. Thompson. Prior to this pregnancy, Mrs. Thompson enjoyed good health. After the pregnancy, Mrs. Thompson encountered a number of varied and, in some cases, quite serious physical problems. Included among these is mixed connective tissue disease, a unique subset of lupus. While there is evidence before the Court that Mrs. Thompson is capable of working and earning a living, the Court finds that the evidence clearly reflects the fact that Mrs. Thompson's ability to work, and more particularly, to work at her trade as a hairdresser, has been substantially impaired by her continuing physical disabilities.

    Mrs. Thompson is 56 years old and continues to work part-time as a hairdresser. She has her own shop where she regularly spends time. Her employment prior to becoming a hairdresser was as. a domestic. She has an eleventh grade education. At the time of her mar-

riage to Mr. Thompson, she was a successful self-employed businesswoman.

Mr. Thompson is 56 years old. At the time of his marriage to Mrs. Thompson, he was retired from the armed forces. Subsequent to the marriage, Mr. Thompson secured employment with the W. Bell & Company as a warehouse manager. He presently receives his military retirement and a salary with W. Bell & Company. He has an eleventh grade education. This evidence does not disclose any evidence which would indicate that Mr. Thompson has experienced or can be expected to experience the same poor health that Mrs. Thompson has encountered or may be expected to encounter.

Mrs. Thompson owns the home she is living in, having purchased Mr. Thompson's interest as a result of a property settlement agreement. This home, located in Sterling, Virginia, is valued at approximately $80,000. The outstanding balance on her mortgage is approximately $33,000. Her monthly mortgage payments are $388.00. Mr. Thompson invested the proceeds of the sale of his interest to Mrs. Thompson (approximately $19,000.00) in an IRA account and money market certificates.

Mrs. Thompson has no retirement plan. Mr. Thompson, in addition to receiving his military retirement, is a participant in the W. Bell & Company Deferred Profit Sharing Plan. As of the date of the separation of the parties (October 10, 1981), Mr. Thompson's interest in the plan was 70% vested. The value of his vested interest as of that date was $9,994.90. The Court has concluded that Mr. Thompson's interest in this plan as of October 10, 1981, is "marital property" as defined in § 20-107.3, Code of Virginia, 1950, as amended. In addition to Mr. Thompson's interest in the plan, the Court has determined that five United States savings bonds acquired by Mr. Thompson and issued in the names of both of the parties in an aggregate face value of $375.00 are "marital property." These bonds were issued in the months of May, June, July, August, and September of 1981.

Mr. Thompson is the owner of a 1/6 remainder interest in a house and lot located in Richmond. By deed dated March 24, 1978, Mr. and Mrs. Thompson conveyed a certain lot and improvements thereon to Dennis Lucas, one of Mrs. Thompson's adult sons. This

deed was never recorded; instead, Mrs. Thompson retained the deed and continued to pay taxes on the property. When a portion of the property was taken by the Highway Department, Mrs. Thompson received the proceeds. The evidence demonstrates that Mrs. Thompson intended that her son should have the property when she died and not a present gift. All of her actions were consistent with this intent. This property should therefore be treated as an asset at her disposal.

The evidence reflects the manner in which the parties treated their separate incomes. Thus, both Mr. and Mrs. Thompson were to a certain extent free to spend their earnings on themselves rather than on each other. Therefore, while Mrs. Thompson spent some of her earnings on furnishing the home, she also was able to purchase a mink coat for herself and clothes for her husband. Mr. Thompson maintained a separate checking account out of which he made the mortgage payments and helped support the household. Among other items, Mr. Thompson provided cleaning services for the home.

The Court received income and expense sheets from both of the parties. In addition to her expense sheet, Mrs. Thompson presented the Court with a statement of income, profit and loss for the period January 1, 1983, through April 30, 1983. Mrs. Thompson's income and expense sheet indicates a negative monthly balance of $1,927.50. Mr. Thompson's income and expense sheet indicates a negative monthly balance of $926.24.

Both of the parties made somewhat equal contributions to the well-being of their family. Mrs. Thompson's ability to contribute financially was at times circumscribed by her physical condition. Each, however, treated their incomes separately and yet each assisted in the maintenance of the household. As Mrs. Thompson's condition deteriorated, Mr. Thompson was required to provide greater financial assistance to assist Mrs. Thompson in caring for the marital home. Mr. Thompson clearly acquired and maintained the "marital property" which is the subject of these proceedings.

This is a marriage of two persons previously married who had separate careers to pursue. The tragedy of a stillborn infant followed by Mrs. Thompson's deteriorating physical condition overshadowed the sometimes lavish spending of the parties. While each

party exhibited a great deal of freedom in the manner in which he contributed financially and otherwise to the family, Mrs. Thompson continued to be dependent on Mr. Thompson as a result of her physical condition. She was treated at Walter Reed Hospital. Mr. Thompson paid others to clean the house. Mrs. Thompson's income declined as Mr. Thompson not only continued to maintain an income sufficient to provide for the immediate needs of the household but to build towards his retirement.

Therefore, applying the factors set forth in Section 20-107.3(E), the Court, based upon the equities, rights and interests of each party in the marital property, as determined above, will set as a monetary award the sum of $4,997.45 to be paid in fixed amounts of $200.00 per month on the first of each month until paid in full. This constitutes Mrs. Thompson's interest in the W. Bell & Company Deferred Profit Sharing Plan. The award will not become effective until the first of each month Mr. Thompson actually begins to receive such benefits. In the event Mr. Thompson shall actually receive a lesser sum, then this award shall be so modified as to not equal fifty percent of the cash benefits actually received by Mr. Thompson. The Court further finds that Mrs. Thompson is entitled to a lump sum award in the amount equal to fifty percent of the redemptive value of the bonds as of October 10, 1981.

The Court, based upon the evidence, and considering the criteria set forth in § 20-107.1, Code of Virginia, and especially the earning capacity, obligations, needs and financial resources of the parties, the age and physical condition of the parties and their property interests, and the provisions made with respect to marital property, the Court will award as permanent spousal support the sum of four hundred dollars per month, payable the first of each month.

Both of the parties shall have their own costs and counsel fees in this case.